Filed 2/2/16  Gonzalez v. Briad Restaurant Group CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BERNADETTE GONZALEZ, | B260583 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC509850) |
| v. | |
| BRIAD RESTAURANT GROUP, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Roy L. Paul, Judge.  Affirmed.

Law Offices of Lisa L. Maki, Lisa L. Maki and Alex DiBona for Plaintiff and Appellant.

Callahan, Thompson, Sherman & Caudill and Kathleen M. Hartman for Defendant and Respondent.

_____

Appellant Bernadette Gonzalez sued her former employer, respondent Briad Restaurant Group, LLC, doing business as TGI Friday's, for wrongful termination and related claims. A jury found in favor of respondent on all claims. On appeal, appellant contends that the special verdict form was erroneous, "substantial evidence supports reversal," and there was juror misconduct. We affirm on both procedural and substantive grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

### Appellant's Employment History

Appellant worked at TGI Friday's three different times: In 2005, she worked at the Ontario location, where she was hired by Jesus De La Torre (De La Torre); in 2008, she worked again at the Ontario location; and starting in 2009, she worked at the West Covina location.

Appellant testified that when she told De La Torre in 2005 that she was pregnant, he asked her if she was going to keep the baby because she was single. She never complained about this statement to anyone, and she later applied to the West Covina location knowing that he was the general manager there. De La Torre ultimately promoted appellant from server to bartender at the West Covina location.

In July 2011, while employed as a bartender, appellant requested and was granted a medical leave of absence for carpal tunnel syndrome that lasted until September 2011, when she returned to her position.

Shortly after returning to work in September 2011, appellant informed her assistant manager, and later De La Torre, that she was pregnant. She testified that De La Torre asked whether she was going to keep the baby and marry her boyfriend. In December 2011, appellant submitted an application for a leave of absence due to her pregnancy, seeking leave beginning on December 24, 2011, with an expected end date of May 10, 2011. Respondent granted the medical leave to an ending date "unknown at this time—based on medical certification," and requested a doctor's note by January 9, 2012. On January 26, 2012, a doctor's note was faxed to respondent, stating that appellant's medical leave was expected to end April 26, 2012. On January 27, 2012, respondent

2

granted appellant medical leave through April 26, 2012, with an anticipated return date of April 27, 2012.

Appellant failed to return to work on April 27, 2012, after her medical leave had expired. On May 7, 8, and 9, 2012, the bar manager at the West Covina location attempted to contact appellant, but appellant did not return messages or contact respondent.

On May 13, 2012, which was 19 days after appellant's leave had expired, respondent received a doctor's note stating that appellant was advised to stay off work from May 2 through May 30, 2012. Respondent granted appellant's request for additional leave to May 30, 2012. The jury heard testimony that it is not uncommon for respondent's employees to simply fail to return to work after being granted leave requests.

Appellant failed to return to work or contact respondent when her leave expired on May 30, 2012. De La Torre called appellant on June 5, 6 and 7, 2012. He left a message the first time, but there was no ring tone on the next two calls and he thought the phone sounded disconnected. At some point before May 14, 2012, appellant brought her baby to the West Covina restaurant.

On June 7, 2012, a week after appellant's leave had expired, De La Torre sent an e-mail to human resources inquiring about discontinuing appellant's employment based on her failure to return to work. The next morning, June 8, 2012, human resources notified De La Torre that appellant's employment would be terminated for the reason that she "did not return from leave." On June 18, 2012, respondent sent appellant a notice that her employment had been terminated effective May 31, 2012. Appellant did not receive this notice and did not become aware of her termination until July 18, 2012, when she called the West Covina restaurant to tell De La Torre that she would be faxing another leave extension, and he told her to contact human resources.

Appellant testified that on June 8, 2012, which was after her leave expired, she faxed to the West Covina restaurant a doctor's note to extend her leave of absence from

3

May 31, 2012, to July 1, 2012. Appellant's attempt to introduce her fax transmission receipts into evidence at trial was denied.

**Procedural History**

In May 2013, appellant sued respondent for wrongful termination, discrimination, retaliation, failure to accommodate, failure to prevent discrimination and retaliation, and violation of the California Family Rights Act. Trial proceedings took place in September 2014 over eight days, with testimony heard over three days. The jury returned special verdicts in favor of respondent on all counts. Per appellant's request, the jury was polled. No finding had less than a 10 to 2 majority for respondent. Judgment was entered in favor of respondent, and appellant's motion for a new trial was denied. This appeal followed.

DISCUSSION

**I. Special Verdict Form**

Appellant contends the special verdict form is erroneous, because it groups all of her claims under the California Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) (FEHA) under the single heading, "Discrimination." The first question to be answered by the jury is, "Did Briad Restaurant Group, L.L.C. know that Bernadette Gonzalez had a physical condition that limited a major life activity?" The jury responded "No." Appellant asserts this question is "wholly inapplicable to her other FEHA claims of sex discrimination, pregnancy discrimination, and/or perceived physical condition discrimination."

Appellant's argument is slightly confusing because the special verdict form actually contains several headings for her FEHA claims, including retaliation, failure to accommodate, failure to engage in the interactive process, and failure to prevent discrimination and/or retaliation. It appears that appellant is largely upset that all of her discrimination theories are grouped together under one heading of discrimination. But this is of no consequence because appellant has forfeited her challenge to the special verdict form.

4

The record indicates that when the parties initially submitted proposed special verdict forms, they objected to each other's forms.  The parties then had extensive discussion with the trial court on the verdict form.  When no agreement was reached on the record, the trial court ordered the parties to meet and confer after recessing for the day.  By the following morning, the parties had met and conferred and had "reached 100 percent agreement" on the special verdict form.  Additional time was given to appellant's counsel to review the final printed version of the verdict form.  After this additional time, appellant's counsel stated on the record that she had reviewed the form.  When asked by the court, "Is there any problem with it?" she responded, "No."  After the verdicts were reached and the jury was polled, appellant did not seek any additional clarification or correction of the verdict form.

If the issue of having separate verdict forms for each of appellant's theories of discrimination was as important as appellant now asserts, it was incumbent upon her to see that this was done.  (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 529–530 (*Behr*).)  Because appellant did not do so, and expressly agreed to the final special verdict form, we do not address her claim of error.

## II.  Substantial Evidence

Appellant contends "substantial evidence supports reversal."  Appellant has the standard of review backwards.  The question is not whether there is evidence to support a finding in her favor, but whether there is substantial evidence to support the findings actually made by the jury in favor of respondent.  Reversal of a jury's findings is not permissible just because there is evidence to support the appellant's position.  Reversal is only permissible under the substantial evidence standard if there is no substantial evidence to support the jury's verdict.  (*Behr, supra*, 193 Cal.App.4th at p. 527.)

"'In reviewing the sufficiency of evidence on appeal, we resolve all conflicts in favor of the prevailing party and we indulge all legitimate and reasonable inferences to uphold the verdict if possible.  "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence,

5

contradicted or uncontradicted, which will support the conclusion reached by the jury. . . .” [Citation.]’ [Citation.] ‘“[W]e have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.” [Citations.]’” (*Behr, supra*, 193 Cal.App.4th at p. 527.)

In raising her substantial evidence contention (which consists of less than a page in her opening brief), appellant fails to undertake any meaningful substantive legal or factual analysis. She simply asserts that “there was undisputed evidence that Plaintiff was pregnant, submitted leave requests which were granted, and that she was a qualified individual with a disability.” “It is an established rule of appellate procedure that an appellant must present a factual analysis and legal authority on each point made or the argument may be deemed waived.” (*People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200.) “To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.” (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Appellant has not done so. Instead, by her conclusory summation and misunderstanding of the standard of review, she has improperly shifted her appellate burden (to demonstrate the absence of substantial evidence) to respondent (to demonstrate the existence of substantial evidence). For this reason, we conclude that appellant has forfeited her substantial evidence challenge to the jury’s verdicts.

Even if we were to address appellant’s contention, we would find there was substantial evidence to support the jury’s findings. The evidence showed that when appellant first applied for her leave of absence, her stated reason was for the “birth of [her] son or daughter.” Respondent granted her leave request. In January 2012, appellant submitted documentation from her healthcare provider stating that her medical leave was expected to end April 26, 2012. Respondent granted this medical leave. Nineteen days after her leave expired, appellant submitted a doctor’s note stating she had been advised to stay off work from May 2 through May 30, 2012, and was released to return to work on May 31, 2012. Nothing in this document stated that appellant had a physical

6

condition that limited a major life activity. Yet, respondent still granted appellant's leave through May 30, 2012.

When appellant's new period of leave ended on May 30, 2012, with no additional notification from appellant or her medical provider, a reasonable inference to be drawn was that she no longer had a physical condition that limited a major life activity. By May 30, 2012, appellant had been off work for her pregnancy for more than five months. The jury also heard testimony that it was not uncommon for employees to simply fail to return to work from their leaves.

While it is true respondent knew at one point that appellant was pregnant and needed a pregnancy leave, at the time respondent terminated her, there was substantial evidence respondent knew she was no longer pregnant, her doctor's note extending her leave had expired, and she had not returned any calls inquiring about her leave. As to the request for an extension of leave that appellant testified she faxed to the West Covina restaurant on June 8, 2012—nine days after she was supposed to return to work—the document was introduced for the limited purpose of corroborating her testimony, and not for its truth, and the jury was so instructed.

In sum, regardless of the theory of liability (discrimination, retaliation, failure to accommodate), the evidence was substantial and consistent that appellant requested leave, was granted leave, was granted extensions of leave, failed multiple times to return from expired periods of leave, and was terminated after her final leave had expired.

## III. Juror Misconduct

Appellant contends the trial court erred in denying her motion for a new trial because it was supported by a declaration of juror misconduct.

When ruling on an allegation of jury misconduct as a basis for a new trial, the trial court must engage in a three-step inquiry: (1) whether the declarations supporting the motion are admissible; (2) if admissible, whether the facts establish misconduct; and (3) if there is misconduct, whether the conduct was prejudicial. (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 160.) A trial court has broad discretion in

7

ruling on each of these issues, and its rulings will not be disturbed absent a clear abuse of discretion. (*Ibid.*)

Evidence Code section 1150, subdivision (a), establishes whether a juror declaration is admissible. This statute provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).)

In *People v. Danks* (2004) 32 Cal.4th 269, 302, our Supreme Court reiterated that Evidence Code section 1150 "'distinguishes "between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved. . . .'" [Citation.] "'. . . The only improper influences that may be proved under [Evidence Code] section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration.'" [Citation.]" Thus, juror declarations are inadmissible to the extent they describe the effect of any act on a juror's subjective reasoning process, and to the extent they purport to describe the jury's understanding of the instructions or how they arrived at their verdict. (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 349.)

Appellant relied on the declaration of Juror No. 12. We find this declaration inadmissible because it purports to explain the feelings of other jurors and how the jury arrived at its verdict. For example, the declaration states that Juror No. 1 made a statement "to support her belief, pre-deliberation, that the jurors should find against the Plaintiff"; "no one wanted to go against her because she was very angry"; "No one wanted to listen to what we had to say"; and another juror's comment "made them all go along with what Juror Number 1, said, . . . as a basis for finding against Ms. Gonzalez."

Even if the declaration was admissible, it does not establish juror misconduct. Appellant complains that Juror No. 1 prejudged the case and falsely stated that appellant

8

turned in late her doctor's notes requesting leave extensions. But the only discussions mentioned in the declaration are those made during the deliberations. There is no allegation that Juror No. 1 made any statements prior to the actual deliberations. Additionally, the evidence showed that appellant's doctor's notes requesting leave extensions were each submitted late.

Furthermore, appellant has not proven any prejudicial misconduct. The comments about the evidence described in the juror declaration are consistent with the evidence produced at trial. And the trial court sat through the entire trial and was very involved. The court was in the best position to know if there was juror misconduct or if the verdict was not supported by substantial evidence.

Appellant has not established that the trial court abused its discretion in denying her motion for a new trial.

### DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                ASHMANN-GERST


We concur:


_____, P. J.
        BOREN


_____, J.
        CHAVEZ

9